# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3546

_____

Belinda Moore,

        Plaintiff - Appellant,

v.

Michael J. Astrue, Commissioner,
Social Security Administration,

        Defendant - Appellee.

*
*
*
*
*   Appeal from the United States
*   District Court for the
*   Eastern District of Arkansas.
*
*
*
*

_____

Submitted: June 10, 2009
Filed: July 14, 2009

_____

Before BYE, HANSEN, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

Belinda Moore appeals the district court's[1] decision affirming the Commissioner of the Social Security Administration's denial of her application for disability insurance benefits. We affirm.

--------

[1]The Honorable Beth Deere, United States Magistrate Judge for the Eastern District of Arkansas, presiding by consent of the parties under 28 U.S.C. § 636(c).

I

Moore was a licensed practical nurse ("LPN") from 1981 until 1999, at which point she stopped working because she felt she could no longer perform her job. During this period, she worked in a hospital, a doctor's office, and a nursing home.

Moore sought treatment at the Northeast Arkansas Clinic ("NEA") and the Department of Veterans Affairs Medical Clinic ("VA") almost forty times between May 1998 and September 2004. From May 1998 to February 2001, she sought treatment from Dr. Kimberly Leaird at the NEA, who diagnosed her with fibromyalgia. Dr. Leaird recommended aerobic exercise, prescribed a trial of Elavil and Ultram, and gave her numerous Depo-Medrol and Lidocaine injections for the pain. These injections provided Moore with marked pain relief for approximately six weeks at a time.

From August 2001 to December 2004, Moore also sought treatment from various physicians at the VA, usually complaining of back and knee pain. She was diagnosed with degenerative disc disease. Weight loss and exercise were the recommended treatment rather than surgery. She was also diagnosed with osteoarthritis in her knees, which was treated with Synvisc injections, Diclofenac, and Tylenol Arthritis. Possible knee replacement surgery was discussed in 2003, but Moore chose to pursue more conservative treatment at that time. She ultimately replaced her right knee in January 2006 and her left knee in May 2006.

On July 16, 2003, Moore applied for social security disability insurance benefits. She claimed she was disabled since August 31, 2001, due to fibromyalgia, hypertension, degenerative disc disease, depression, and chronic knee pain. Moore's application was denied at both the initial and reconsideration levels. She then requested a hearing before an Administrative Law Judge ("ALJ"). At the hearing, Moore amended her alleged disability onset date to be April 28, 2003. The ALJ

found Moore was not disabled as defined in Title II of the Social Security Act, 42 U.S.C. §§ 401-34. Moore requested review of the ALJ's decision, which was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000). Moore sought judicial review under 42 U.S.C. § 405(g). The district court affirmed the Commissioner's decision. Moore appealed to this Court, which has jurisdiction under 28 U.S.C. § 1291.

II

We review a district court's decision upholding the denial of social security benefits de novo. Hamilton v. Astrue, 518 F.3d 607, 610 (8th Cir. 2008). "Our review is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole." Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." Lewis v. Barnhart, 353 F.3d 642, 645 (8th Cir. 2003) (quoting Kelly v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998)). "If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion." Clay v. Barnhart, 417 F.3d 922, 928 (8th Cir. 2005).

Moore's insurance expired on December 31, 2004. She has to establish her being disabled prior to the expiration of her insurance to be entitled to disability insurance benefits. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). Thus, the relevant time period is from her amended alleged disability onset date, April 28, 2003, until December 31, 2004, her insurance expiration date.

The ALJ used the familiar five-step sequential test to evaluate Moore's disability claim. These steps are: (1) whether the claimant is currently engaged in

any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to her past relevant work; and (5) whether the claimant can adjust to other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Prior to step four, the ALJ must assess the claimant's residual functioning capacity ("RFC"), which is the most a claimant can do despite her limitations. Id. § 404.1545(a)(1). The claimant has the burden of proof to show she is disabled through step four; at step five, the burden shifts to the Commissioner to show there are other available jobs in the economy. Snead v. Barnhart, 360 F.3d 834, 836 (8th Cir. 2004). If it can be determined that a claimant is not disabled at a step, the ALJ does not need to continue to the next step. 20 C.F.R. § 404.1520(a)(4).

Applying the five-step test to Moore's claim, the ALJ determined: (1) she was not currently engaged in substantial gainful activity; (2) she did have severe impairments; (3) her impairments did not meet or equal one listed in the Appendix. Prior to step four, the ALJ found Moore had the RFC for a wide range of light work. Based on this assessment, the ALJ determined (4) Moore could return to her past relevant work as an LPN. Because the ALJ determined Moore was not disabled at step four, he did not continue to step five.

III

On appeal, Moore asserts the ALJ erred in determining she had the RFC to perform light work and could therefore return to work as an LPN. "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006) (quoting Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be

supported by some medical evidence of the claimant's ability to function in the workplace." Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008) (quoting Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)).

Moore's argument on appeal is two-fold: (1) the ALJ's RFC determination was not supported by medical evidence; and (2) the ALJ improperly discredited Moore's description of her own limitations.

A

The ALJ's determination that Moore had the RFC to perform light work and could thus return to work as an LPN is supported by the medical evidence. On September 12, 2003, Dr. Alice Davidson conducted an RFC assessment at the request of the Social Security Administration. Dr. Davidson determined Moore could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand and/or walk about six hours in an eight hour day, and occasionally reach overhead, stoop, and crouch. Moore provided no contrary RFC assessment by another physician, treating or otherwise. Thus, the ALJ had an adequate medical basis to find Moore had the RFC to perform a wide range of light work and could therefore return to work as an LPN. See Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) (concluding that one consulting physician's RFC assessment supported the ALJ's RFC finding when none of the claimant's treating physicians opined she was unable to work).

In addition, the ALJ's finding was consistent with Dr. Donald Fleener's observations of Moore in January 2004. Dr. Fleener noted that Moore had full range of motion in her neck, normal tandem and narrow-based gaits, normal heel walk, and normal rotating of fists and fingers. She had no difficulty rising from a chair and had full 5/5 strength proximally and distally in both upper and lower extremities. These observations further support the ALJ's RFC finding. See Flynn v. Astrue, 513 F.3d

788, 793 (8th Cir. 2008) (finding substantial evidence existed to support the ALJ's RFC determination when treating physicians found claimant had normal or full muscle strength and good mobility).

The ALJ also noted that Moore's physicians did not restrict or limit her activities. Moore argues that the silence of her medical records on the question of work restrictions does not constitute medical evidence to support the ALJ's RFC assessment. This argument, however, is undermined by the fact that Moore's physicians on numerous occasions *encouraged her to engage in physical exercise.* A lack of functional restrictions on the claimant's activities is inconsistent with a disability claim where, as here, the claimant's treating physicians are recommending increased physical exercise. Hensley v. Barnhart, 352 F.3d 353, 357 (8th Cir. 2003). Therefore, the ALJ's determination that Moore had the RFC to perform light work and thus could return to work as an LPN is supported by medical evidence.

B

Moore next argues that the ALJ improperly discredited her testimony regarding her limitations. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Homstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). "An ALJ who rejects [subjective] complaints must make an express credibility determination explaining the reasons for discrediting the complaints." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). The ALJ need not explicitly discuss each factor, however. Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir.

2005). "It is sufficient if he acknowledges and considers [the] factors before discounting a claimant's subjective complaints." Id. (quoting Strongson, 361 F.3d at 1072).

In this case, the ALJ found Moore incredible based on the following factors: (1) her daily activities; (4) the effectiveness of her pain management with medication; (5) the lack of functional restrictions; and (7) the absence of objective medical evidence. In regard to her daily activities, the ALJ found doing household chores, preparing meals, and going out to eat were inconsistent with Moore's testimony about her pain. See Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (finding that activities such as driving, shopping, watching television, and playing cards were inconsistent with the claimant's complaints of disabling pain).

Next, the ALJ found Moore's ability to manage her pain through medication was inconsistent with her alleged disabling level of pain. Both her physicians and Moore herself reported the pain in her knees from osteoarthritis improved after receiving injections, and her back pain and other general complaints of pain were often managed with limited use of prescription medications and over-the-counter Tylenol. See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997) (concluding that, if an impairment can be controlled through treatment or medication, it cannot be considered disabling). The ALJ found such conservative treatments were inconsistent with Moore's alleged disabling pain.

The ALJ next found Moore's alleged functional limitations that she was unable to use her hands and was limited to sitting no longer than 10-15 minutes were not at the direction of any physician, and such limitations were inconsistent with her daily activities. A lack of functional restrictions is inconsistent with a disability claim. Hensley, 352 F.3d at 357.

Finally, regarding objective medical evidence, Moore argues the ALJ failed to consider the alleged severity of her knee problems when evaluating her credibility, citing the discussion of knee replacement surgery in 2003. Moore did not undergo knee replacement surgery until January 2006, however, electing more conservative treatment. Moore had the surgery over a year after her insurance had expired. Although "[e]vidence from outside the insured period can be used in 'helping to elucidate a medical condition during the time for which benefits might be rewarded,'" Cox, 471 F.3d at 907 (quoting Pyland v. Apfel, 149 F.3d 873, 877 (8th Cir. 1998)), X-rays of Moore's knees in 2005 show significantly more deterioration than those taken prior to the expiration of her insurance on December 31, 2004. New evidence is required to pertain to the time period for which benefits are sought and cannot concern subsequent deterioration of a previous condition. Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997). Thus, the ALJ properly determined that Moore's subsequent knee replacement surgeries do not establish she was disabled prior to the expiration of her insurance.

In light of the ALJ's findings, it is apparent he sufficiently considered Moore's testimony regarding her disabling pain, but discredited it for good cause because her testimony was inconsistent with the record as a whole.[2]

IV

The judgment of the district court is affirmed.

_____

_____

[2]Moore asserts the ALJ also erred by failing to discuss her work history. However, as stated above, the ALJ is not required to explicitly discuss each factor. See Goff, 421 F.3d at 791.